**Charles DeLaFUENTE, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 83 Civ. 1275.

United States District Court, E.D. New York.

April 30, 1984.

Charles DeLaFuente, pro se.

Raymond J. Dearie, U.S. Atty., Brooklyn, N.Y., Glenn L. Archer, Jr., Asst. Atty. Gen., U.S. Dept. of Justice, Tax Div., by D. Patrick Mullarkey, Chief, Civ. Trial Section, Northern Region, and Richard M. Prendergast, Trial Atty., Tax Div., and James M. Shaker, Tax Div., Washington, D.C., Sumner L. Lipsky, Dist. Counsel, I.R.S., Uniondale, N.Y., for defendant; William B. Peterson, Asst. U.S. Atty., Brooklyn, N.Y., of counsel.

## MEMORANDUM–DECISION and ORDER

BARTELS, District Judge.

Defendant United States of America made a motion before this court, on April 27, 1984, for an order granting summary judgment on the ground that plaintiff Charles DeLaFuente is not entitled to a federal tax refund as a matter of law.

Plaintiff was employed by the New York Post from 1969 to 1978. During those years, he was a member of The Newspaper Guild of New York and was covered by collective bargaining agreements between the Post and the Guild. The agreement covering the period from March 31, 1978 to March 30, 1981 was in effect when plaintiff left the Post on May 19, 1978.

In early 1978, new management at the Post sought to reduce the number of employees and encouraged voluntary resignations by a significant number of employees. On May 19, 1978, plaintiff voluntarily resigned and thereafter received a check from the Post for $25,164.09, of which $22,677.30 was severance pay pursuant to Article X of the collective bargaining agreement and $2,486.79 was vacation pay pursuant to Article VIII of the same agreement. Several months later, plaintiff re-

ceived another check, for $683.20, as additional Article X severance pay.

Plaintiff's W–2 statement for 1978, furnished to him by the Post, listed all of the above monies as ordinary income in the "wages, tips and other compensation" box, together with the salary earned by the plaintiff that year before he resigned. Plaintiff originally included the entire amount as ordinary income and paid a total of $8,507.00 in federal taxes that year. He later amended his return to show the $25,164.09 lump-sum payment as a pension plan distribution which gets favorable tax treatment under § 402(e) of the Internal Revenue Code, Title 26, and sought a refund of $5,749.00. Plaintiff's claim was denied and this action followed, plaintiff appearing *pro se.*

The government now moves for summary judgment on the ground that, as a matter of law, Article X ("Severance Pay") of the Post-Guild contract is not a qualified pension plan under I.R.C. § 401(a), and therefore cannot receive favorable tax treatment under § 402(e).

Section 401(a) provides that

A trust created . . . and forming part of a . . . pension . . . plan of an employer for the exclusive benefit of his employees . . . shall constitute a qualified trust [thus qualifying for favorable treatment under § 402] . . .

(1) if contributions are made to the trust by such employer . . . for the purpose of distributing to such employees . . . the corpus and income of the fund accumulated by the trust in accordance with such plan. . . .

The government argues, and plaintiff concedes, that the Post never created a trust or contributed to any such trust to provide for the exclusive benefit of its employees, including the severance pay which plaintiff received. In fact, the government received a letter from the Post in February, 1984 (Government Exhibit E–1) stating that

New York Post Corp. does NOT have a Pension Plan for Guild Employees. It contributes to News Paper Guild Publishers Pension (amount in contract). The severance payment to Mr. DeLaFuente was NOT covered under a qualified IRS Pension Plan.

The government claims that the most basic requirement of a § 401(a) qualified pension plan is that there be a trust fund, which does not exist in this case. Article X of the labor contract provides for severance pay to employees under certain conditions, increasing with years of employment like a pension plan, but imposes no duty on the Post to set up a fund or hold money in any trust for employees who might or might not qualify.[1]

In conclusion, the government argues that the severance payment, not made out of any trust fund, must obviously be ordinary income not deriving from any qualified pension plan and, thus, not subject to favorable tax treatment. Furthermore, nothing in the Employee Retirement Income Security Act of 1974 ("ERISA") requires an employer to fund potential severance pay liabilities or otherwise changes the result.

Plaintiff argues that (1) although the Post never actually set up a trust fund, the Post's Severance Pay Plan is covered by ERISA and the Post was required by ERISA to set up such a fund, and its failure to do so should not deprive plaintiff of the favorable tax treatment that he would otherwise have been entitled to had the Post acted in accordance with the law, and (2) there is a question of fact as to whether the Post's Severance Pay Plan is covered by ERISA as a pension plan, thus requiring the Post to set up a trust fund.

Plaintiff contends in explanation that severance pay in the newspaper industry was designed as a supplementary pension benefit because the other pension benefits referred to in Article XII of the labor

---

**1.** In comparison, Article XII ("Health and Welfare") Section 2 ("Pensions") provides for payments by the Post to the Newspaper Guild of New York—Publishers' Pension Fund on behalf of each Guild employee. This appears to be a qualified pension plan. No claims were made with regard to whether plaintiff received any money from this fund.

agreement are very meager, and because there is a real possibility in the New York newspaper industry that a newspaper might fold. Finally, plaintiff asserts that the existence of a qualified pension plan in Article XII does not automatically exclude the possibility that the Severance Pay Plan in Article X might be a qualified pension plan as well.

The issue here is whether plaintiff can get favorable tax treatment on a lump-sum payment made to him by the Post not out of any trust fund. We think not. The fact that the Post might have been under a duty to set aside funds for severance pay is immaterial since in actuality no such funds were set aside under § 401(a)(1).

This decision is reaffirmed by *Trebotich v. Commissioner*, 492 F.2d 1018 (9th Cir. 1974) (pre-ERISA), where the employer was under a contractual duty to make contributions to a mechanization fund, but failed to do so. Taxpayer received a lump-sum payment, as retirement benefits, and sought favorable tax treatment which was denied by the district court on the ground that the payment did not come from a funded, qualified trust. The Court of Appeals affirmed, stating

> The crucial determinant in this area is whether the employer has systematically set aside funds presently, as benefits accrue, to provide for these benefits when they become due in the future. Whether or not the employer is contractually obligated to pay pension benefits is irrelevant to our determination, in that the protections provided under the qualified trust provisions of the Code are geared, not to the employer's legal obligation to continue a plan, but to the existence of a continuing program under which funds, already contributed, are protected from direct or indirect diversion contrary to the interests of the employee. As we have indicated, the statute [§ 401(a) ] envisions the actual setting aside of funds in a protected trust, and not merely the existence of a promise, whether enforceable or not, to pay benefits when they become due.

*Id.* at 1025. *See Myron v. United States,* 382 F.Supp. 590 (C.D.Cal.1974) (also pre-ERISA), *aff'd,* 550 F.2d 1145 (9th Cir.1977), holding that where the employer could have made payments for employees who should have been covered by the plan, but did not do so, the plan was not qualified and retroactive payments could not cure the deficiency and thereby qualify the plan. Even though *Trebotich* and *Myron* are pre-ERISA cases, we believe that ERISA does not impliedly change the express requirement of § 401(a)(1) that contributions be made to the trust fund by the employer in order to qualify for favorable tax treatment under § 402. Further, it is not clear at all that ERISA even requires that the Post set up a trust to fund its Severance Pay Plan. We find no cases and plaintiff has cited none to support his theory.

Accordingly, defendant's motion for summary judgment is hereby granted.

SO ORDERED.